**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21CR43** |
| | ) | |
| **ANDREY KALUGIN,** | ) | **The Honorable T.S. Ellis, III** |
| | ) | |
| **Defendant.** | ) | |

## MOTION FOR A NEW TRIAL

COMES NOW the Defendant, Andrey Kalugin, by and through counsel, and pursuant to the Federal Rules of Criminal Procedure, respectfully requests that this Court grant a new trial because admissible evidence essential to the defense was inappropriately excluded at trial. Fed. R. Crim. P. 33.

### BACKGROUND & CENTRAL ISSUES IN THE CASE

The Indictment charged three counts against co-defendants Laura Gallagher ("Ms. Gallagher") and Mr. Kalugin. The charges arose from Mr. Kalugin's application for expeditious naturalization, or "319b naturalization," based on his marriage to Ms. Gallagher, who was then a foreign service officer, employed with the State Department. Indictment, ECF No. 21. The government's theory was that the defendants continued to press for expedited naturalization through the 319b naturalization process, even after they were "separated" in May of 2016. More specifically, the government's theory was that the co-defendants lied about their "separation," and related matters, in order to obtain naturalization for Mr. Kalugin. Mr. Kalugin was naturalized in February of 2018.

Count One charged conspiracy (a) to defraud the United States by impeding, impairing and obstructing the lawful government functions of DHS, including USCIS, with respect to the application review, investigation, and decision-making process for immigration benefits; (b) to knowingly procure and attempt to procure, contrary to law, the naturalization of any person in violation of 18 U.S.C. § 1425(a); (c) to knowingly make false statements under oath in any case, proceeding, and matter relating to, and under, and by virtue of any law of the United States relating to naturalization, citizenship, and registry of aliens, in violation of 18 U.S.C. § 1015(a); and to use and attempt to use any certificate of naturalization, certificate of citizenship, and other documentary evidence of naturalization and citizenship, and any duplicate and copy thereof, knowing the same to have been procured by fraud and false evidence and others.

Count Two charged that the defendants unlawfully procured naturalization for Mr. Kalugin by having Mr. Kalugin knowingly make four allegedly false representations in a February 2018 naturalization interview – including that he was "married, when, in truth and fact, as he then well knew, he had been separated from his spouse since May 2016." *Id.* at 13.

Count Three charged that the defendants unlawfully procured naturalization for Mr. Kalugin by having Mr. Kalugin knowingly make two allegedly false statements in a February 2018 interview, including that he "had a good faith intention, upon naturalization, to reside abroad" with Ms. Gallagher where she was posted due to her State Department employment, and "had a good faith intention to

take up residence within the United States with" her immediately upon termination of her employment with the State Department abroad. *Id.* at 15.[1]

Among the material facts in dispute in this case were whether Mr. Kalugin understood the status of his relationship to his spouse, Ms. Gallagher, to be "separated," and whether he genuinely intended to reside Ms. Gallagher at her diplomatic post (and beyond), when he was interviewed in February of 2018. That is, because only a *knowing* lie about whether he was separated from his wife would make Mr. Kalugin guilty of naturalization fraud when he said they were married, and when he said he intended to live with his wife, Mr. Kalugin's *understanding* of the state of the couple's marriage was central to the case.

According to the government, the couple was "separated" in May of 2016 because, that month, Mr. Kalugin left Virginia, where the couple had been residing together as Ms. Gallagher began her training with the State Department, and traveled back to California after a big fight. The government also offered evidence that Ms. Gallagher told people the two were broken up after that point, and engaged in relationships with others after that point. Finally, the government offered evidence that although Mr. Kalugin did eventually travel to Mexico after he was naturalized, he was not there for long. From this evidence, the government contended, the jury could infer not only that the couple were in fact "separated" in May of 2016, but also that Mr. Kalugin *knew* that this was the case when he said otherwise in his February

---

[1] These alleged lies were also alleged to be overt acts in furtherance of the conspiracy charged in Count One. Indictment, ECF No. 21 at 12-13.

of 2018 naturalization interview (and when he made other statements consistent with the position that he was married), thereby making knowingly false statements.

Mr. Kalugin defended himself on these issues in two ways. First, he offered evidence that the couple did *not* separate until Ms. Gallagher filed for divorce in July of 2018. This included evidence that, after May of 2016, the couple continued to communicate, visited each other, and engaged in intimacy, and also attempted to buy real property. Second, he offered evidence that, with good reason, he personally did not believe that he was "separated" from his wife until she filed for divorce in July 2018, and was not aware that Ms. Gallagher had a different view (assuming she did). This included, among other things, his own testimony about his view of the marriage at various times, evidence that he told a work colleague that he was going to Mexico to live with this wife, and Ms. Gallagher's testimony that she never told Mr. Kalugin that the marriage was over until July of 2018. This motion concerns the Court's exclusion of what would have been particularly persuasive additional defense evidence the to prove this second defense.

## ARGUMENT

### I.   The Standard of Review Under Federal Rule of Criminal Procedure 33

Under the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33; *see also United States v. Mitchell*, 602 F.2d 636, 639 (4th Cir. 1979) ("In circumstances [in which the defendant files a motion for new trial under Rule 33], the interest of justice is the touchstone for consideration."); 3 Wright & Miller, Federal

4

Prac. & Proc. § 556 (1982) ("Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial."). "[T]he meaning of the phrase in 'the interest of justice' in the context of Rule 33 is not difficult to discern; the phrase's plain meaning makes unmistakably clear that granting a new trial is discretionary, and the cases reflect that this discretion should be exercised where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006) (Ellis, J.); *accord United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000) ("By its terms, Rule 33 confers broad discretion on a district court.").[2]

Rule 33 is available to correct not only convictions based on insufficient evidence, but also convictions affected by other legal errors. *See United States v. Golding*, 168 F.2d 700, 702 (4th Cir. 1999) (describing standard applied to claims of prosecutorial misconduct); *United States v. Munoz*, 605 F.3d at 373 ("[I]t is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred."). The question in such cases is not

---

[2] Under Rule 33, the court's discretion is not limited by the plain and harmless error standards applied on appeal. *Jennings*, 438 F. Supp. 2d at 641 n.10. Moreover, Rule 33 embodies an additional standard when a motion is based on the weight of the evidence, such that a court may grant a new trial "only when the evidence weighs heavily against the verdict." *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997); *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985). But the standard recited in these cases is distinct from that which must be applied to claims of, for example, "substantial rights of the defendant have been jeopardized by errors during trial," as asserted in this case. *See United States v. Munoz*, 605 F.3d 359, 373 n.9 (6th Cir. 2010) (distinguishing Rule 33 standard applied to weight of the evidence claims from other new trial grounds, and criticizing district judge for conflating standards).

whether the weight of the evidence heavily favors innocence, but whether the error reasonably could have affected the jury's verdict. *See, e.g.*, *United States v. Ibisevic*, 675 F.3d 342, 350 (4th Cir. 2012) (question is not "whether absent the error, 'sufficient evidence existed to convict,' but rather whether 'we believe it 'highly probable that the error did not affect the judgment'"); *United States v. Jones*, 542 F.2d 186, 211 (4th Cir. 1976) (jury verdict may be overturned "when substantial prejudice has occurred").

## II.    The Court Should Grant Mr. Kalugin a New Trial Because Admissible and Exculpatory Evidence that Mr. Kalugin had Reason to Believe He was Not Separated was Excluded.

### A. *The Defense Proffered Evidence that Mr. Kalugin was Receiving Loving Private Communications from Ms. Gallagher After May 2016.*

To establish that the couple was in fact separated, and that Mr. Kalugin understood the couple to be "separated," the government offered communications between Ms. Gallagher and others that she and Mr. Kalugin "broke up" in May 2016 and decided to remain friends. *See, e.g.*, Gov't Exs. 15H, 15. The government also offered evidence that Ms. Gallagher attested twice, under penalty of perjury, that the couple's date of separation was in May 2016. *See* Gov't Exs. 4A, 8A. The government offered bank statements that showed that in May 2016, Mr. Kalugin traveled from Virginia to California. *See* Gov't Ex. 12A. Finally, the government offered testimonial and other evidence that Ms. Gallagher engaged in affairs while working abroad.

However, critically, there was no direct evidence of any contemporaneous communication between Ms. Gallagher and Mr. Kalugin establishing that she ever told him that she considered the marriage over, or any other evidence that, when he

made the statements that the government alleged were lies, *Mr. Kalugin* believed himself separated from his wife, or understood that she considered herself to have separated from him in May of 2016. Indeed, the lead Agent testified that after a search of Ms. Gallagher's emails, he found no communications between her and Mr. Kalugin in which she communicated *to him* that they were separated. *See* Sept. 7, 2021 Trial Tr. at 83.

To support this state of mind defense, the defense sought to introduce evidence that Ms. Gallagher was consistently and frequently sending messages of affection to Mr. Kalugin. Specifically, counsel for Mr. Kalugin attempted to admit private messages from Ms. Gallagher to Mr. Kalugin (and vice versa) after he left Virginia in May of 2016. ("Facebook Messages" or "Defendant's Exhibit 30"). Many of these messages were sent immediately after May 2016, during the time that Mr. Kalugin was traveling from Virginia to California and Ms. Gallagher was telling third parties that she and Mr. Kalugin were broken up. In the Facebook messages, Ms. Gallagher repeatedly used expressions reserved for a significant other, such as "I love you," "thank you Baby!" and "I miss you!" Def. Ex. 30. Thus, in the weeks just after the point in time at which the government contended the couple became "separated," Ms. Gallagher communicated with Mr. Kalugin in an intimate and loving way.

Whether Ms. Gallagher's loving statements were sincere or not, the messages would have induced any reasonable recipient, including Mr. Kalugin, to believe that his marriage with the sender was intact as of May 2016. At a minimum, these

7

messages show that Ms. Gallagher wanted Mr. Kalugin to believe that she felt close to him, and loved him, irrespective of her actual feelings.

In sum, these messages and others contained powerful evidence that Mr. Kalugin had reason to and did in fact believe that he was not separated from his wife when he made the statements at the heart of the government's case. They were thus exculpatory, and their exclusion is grounds for a new trial. *See United States v. Ibisevic*, 675 F. 3d 342 (4th Cir. 2012) (trial court's error in excluding evidence as hearsay when it was not hearsay and central to defendant's defense was not harmless).

> *B. The defense proffered the Facebook Messages not to establish that Ms. Gallagher did sincerely love Mr. Kalugin, but rather to establish the effect of her messages on him, which was relevant to his* mens rea.

Mr. Kalugin's defense offered these communications as: 1) nonhearsay under Federal Rule of Evidence 801(c)(2), because they were not offered for the truth of the matter asserted but rather to show the effect on the listener; 2) admissible under the state of mind exception to the hearsay rule in Federal Rule of Evidence 803(3); 3) admissible under the residual hearsay exception in Federal Rule of Evidence 807; and 4) admissible under the common law rule of completeness. For example, counsel first attempted admission of this evidence during cross examination of the lead Agent:

| | |
|---|---|
| Defense Counsel: | And they were exchanging messages of affection such as "miss you honey bunny, I love you, my one" |
| Government: | Objection, hearsay |
| Court: | It is hearsay. |
| Court: | The reason it is hearsay, Ms. Mullin, is a defendant may not elicit hearsay statements from that defendant unless it is offered by the government. That's when hearsay is admissible, because it's an |

8

|                  | admission. But a defendant cannot offer hearsay statements the defendant made. Is that clear? |
|------------------|-----------------------------------------------------------------------------------------------|
| Defense Counsel: | We submit it falls under one of the exceptions to the hearsay rule, your honor.               |
| Court:           | Which one?                                                                                     |
| Defense Counsel: | 803(3).                                                                                         |
| Court:           | Which is?                                                                                       |
| Defense Counsel: | ***State of mind. It's not being offered for the truth of the matter***.                       |

Sept. 7, 2021 Trial Tr. at 71-73. (emphasis added). Later in the bench conference, defense counsel also offered the communications under Rule 807. *Id.* at 75.

The defense reiterated these positions in a written *in limine* motion in which the defense sought to admit the Facebook messages as nonhearsay under Rule 801(c)(2), and pursuant to the hearsay exceptions in Rules 803(3), and 807.[3] *See* ECF No. 189. In the motion and oral argument, counsel again reiterated that the defense was offering the messages for a limited purpose, not including the truth of the matters asserted in the messages: "Kalugin does not offer these statements to prove that Ms. Gallagher loved Mr. Kalugin when the message was sent. Rather, Mr. Kalugin offers the statement for the purpose of showing that Mr. Kalugin had a reasonable basis to believe, at the time, that Ms. Gallagher loved him." *Id.* at 5. "[W]hether they are separated or not—and their state of mind as to that—it's a critical issue in this case, obviously. And to the extent that there is evidence that has all indicia of reliability that they believed they were together, not separated, we believe that is admissible." Sept. 8, 2021 Trial Tr. at 8. The defense also suggested that the Court could provide

---

[3] The Motion *in Limine* is attached hereto as Exhibit 1.

a limiting instruction after admitting the evidence, to ensure that the jury did not consider them as evidence about whether it was true that Ms. Gallagher's did love Mr. Kalugin, however irrelevant it may have been. Def. Mot., ECF No. 189 at 7.

Ultimately, the Court denied Mr. Kalugin's motion to admit the Facebook Messages as inadmissible hearsay: "Although Kalugin argues that these statements are not being asserted for the truth of the matter asserted, in fact they are. The truth is that 'I love you,' the truth is, 'snuggle wiggly woo,' whatever that means, of course they are being offered for the truth." Sept. 8, 2021 Trial Tr. at 159-60. The Court's ruling suggested that because it happened to be the case that the statements tended to show that the couple was not separated, the statements must be hearsay. But in so ruling, the Court overlooked the *purpose* for which the statements were being offered—that is, to show that Mr. Kalugin had reason to believe he was not separated when he applied for naturalization.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Statements that are not offered for the truth of the matter asserted are not hearsay. Fed. R. Evid. 801(c)(2). Statements are not hearsay because they also happen to be true or probative of whether a fact in issue is true; rather, statements are hearsay only if "a party *offers* [the statement] to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2) (emphasis added). A statement that would be hearsay if offered to prove the truth of the matter asserted can also be nonhearsay so long as it is offered for some purpose other than the truth of the matter

10

asserted. *See United States v. Edelen*, 561 Fed. App'x 226, 235 (D. Md. 2014) (internal citations omitted) (rejecting logic that "because (a) hearsay is offered to prove the truth of the matter asserted and (b) independent evidence indicates a statement is, in fact, true, then (c) the statement must be hearsay" because this deduction "overlooks the critical step of "identifying the *actual purpose* for which a party … introduce[s]" the statement at issue," and approving admission of a text message that was introduced for a "non-truth-dependent purpose").

The doctrinal case—the Fourth Circuit's decision in *Lyons Partnership, L.P. v. Morris Costumes, Inc.*—provides a classic example of a statement being offered to prove something other than the truth of the matter asserted, in the context of trademark infringement. 243 F.3d 789, 804 (4th Cir. 2001). In *Lyons*, the Court held that children's statements exclaiming "Barney, Barney, Barney!" made at a school gathering when they saw the defendant's costume dinosaur, which was *not* actually a costume of the famous and trademarked Barney dinosaur character, were admissible at a trial about whether consumers would confuse the defendant's dinosaur costume with the plaintiff's trademarked Barney costume.

The court admitted the statements as non-hearsay because they were not offered to prove the truth of the matter asserted, *i.e.*, that the defendant's costume was actually a "Barney" costume. *Id*. Instead, the statements were admissible to show that the children and newspaper reporters *believed* the defendant's costume as a trademarked "Barney" costume. *Id.; see also United States v. Lis*, 120 F.3d 28, 31 (4th Cir. 1997) (observing that a statement is offered "to prove the truth of the matter

11

asserted" when its probative value depends on it being "particularly accurate or reliable[,]" so that, if the probative value of the statement arises from an inference unrelated to the statement being true, the statement does not constitute hearsay); *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, (7th Cir. 1980) (evidence "is not inadmissible hearsay because it was offered not to prove the truth of the matter asserted, but rather to illustrate [a] misunderstanding"); *United States v. Kohan*, 806 F.2d 18, 22 (2d Cir. 1986), *cited in United States v. Martin* 657 Fed. Appx. 193, 201 (4th Cir. 2016) (statements of third party to defendant about source of checks was not hearsay because they were offered not to prove the truth of the statements but rather that defendant believed them and was not aware checks were stolen); *United States v. Parry*, 649 F.2d 292 (5th Cir. 1981) (defendant's statement to his mother that the person calling was a narcotics agent, should not have been excluded as hearsay because it was not offered to prove the truth of the matter asserted, rather, it was offered as circumstantial evidence of the defendant's then-existing knowledge that the individual was a narcotics agent, where the theory of defense was that he thought he was assisting in an undercover operation).

In *United States v. Martin*, investigators intercepted a call between Martin and a man named Battle, in which they heard "Martin first seeking Battle's help in obtaining a gun and later telling Battle that he had 'stumbled up on something' and no longer needed Battle's help." 657 Fed. App'x at 195. "Based on the information in the intercepted conversations, the FBI obtained a search warrant for Martin's home," executed it, and found a gun tucked in a closet. *Id.* At trial, Martin's defense was that

12

the gun was his wife's, and that she had not told him about it. *Id.* at 196. He admitted asking Battle to get a gun for him, but stated that it had been meant for someone else, a fact he kept from Battle. *Id.* "Martin explained that he used the 'stumbled up on something' phrasing when talking to Battle because he never told Battle that the gun was for someone else and he needed to maintain the fiction that he had been seeking the gun for himself." *Id.* On appeal, he argued that he should have been allowed to play for the jury a call he had with a third party, Laidler. "The Martin–Battle 'stumbled up on something' conversation played for the jury by the government was a call-waiting call that interrupted a conversation between Martin and Laidler; Martin put Laidler on hold, talked to Battle, and then returned to his conversation with Laidler." *Id.* at 198.

> In the first part of the Martin–Laidler conversation, Laidler told Martin that he had "straightened out" an unidentified situation. Martin then switched over to Battle's incoming call and told Battle he had "stumbled up on something," which Battle understood to mean Martin no longer needed a gun. When Martin returned to his conversation with Laidler, he explained that the other call was from the "dude right there," the "dude that was doing a favor for me." After Martin told Laidler that he told the "dude" (i.e., Battle) that Martin was "all right," Laidler responded, "Yeah, that's right cause I don't need it now...."

*Id.* at 198-99.

The Fourth Circuit held that the trial court erred by excluding the Martin-Laidler conversations, reasoning that the statements were not being offered for the truth of the matter asserted – that Laidler no longer needed what he had asked Marin to obtain. Rather they were offered to show "the effect of [the statements] on Martin: Immediately upon learning that Laidler no longer needed a gun, Martin told Battle

that he no longer needed a gun—that he had 'stumbled up on something.'" *Id.* at 199. "The Laidler conversations were therefore being offered to prove their effect on Martin—to explain his motive in setting Battle on, and later calling him off of, the gun quest," *id.,* and "were not offered for the truth of the matters asserted in the conversations." *Id.* at 200.

Martin contended that "the improper exclusion of the evidence requires a new trial," and the Fourth Circuit agreed, "because the Laidler conversations undercut the central premise of the government's case—that Martin told Battle he had stumbled on something *because* Martin found his wife's gun hidden in the closet." *Id.* at 199; *id.* at 200 (calling this a "central issue" in the case).

Similarly, in a recent murder case, the Fourth Circuit held that the trial court erred when it excluded witness testimony that the victim explicitly threatened to stab another inmate within earshot of the defendant, agreeing with the defendant on appeal that the threat was not hearsay. Rather, the court held, the statement, insofar as the defendant had heard it, was admissible as "circumstantial evidence of [the] defendant's state of mind," *i.e.*, that they were aware of the threat, which helped to explain subsequent behavior. *United States v. Bellinger*, 652 Fed. Appx. 143, 149 (4th Cir. 2016). Further, because the statement was "undoubtedly relevant to the Appellant's state of mind" when he committed a homicide captured on video, the Fourth Circuit found the error was not harmless. *Id.* at 149. Similarly, in *Leake v. United States*, the Fourth Circuit held that the district court improperly excluded out of court statements made to the defendant to the effect that certain money would be

14

used to fund a concert, where the statements were not offered to prove that the money was, in fact, used to finance the concert, but were instead offered as circumstantial evidence of what the defendant believed would happen to the funds. *Leake*, 642 F.2d 715, 720.

Here, too, Ms. Gallagher's statements to Mr. Kalugin were not offered for the truth of the matter asserted, as Mr. Kalugin asserted during trial. The statements were not offered to prove that Ms. Gallagher actually loved Mr. Kalugin, and should have been admissible to show the effect on Mr. Kalugin as probative of an essential element.

### III. Mr. Kalugin's responses in the Facebook Messages were also admissible to provide context for Ms. Gallagher's statements, and, independently, under FRE 803(3), as evidence of Mr. Kalugin's then-existing mental or emotional condition.

Mr. Kalugin's statements in the Facebook Messages were also admissible. First, Mr. Kalugin's responses to Ms. Gallagher's nonhearsay statements were admissible "to provide the context for [Ms. Gallagher's] statements to Mr. Kalugin." *See Martin*, 657 Fed. App'x at 200 n.6 (quoting *Leake*, 642 F.2d at 720 n.6) ("Leake's [admissible, *non-hearsay*] testimony regarding his conversation with Graham would be meaningless unless both sides of the conversation were recounted to the jury. Graham's statements to Leake were admissible, therefore, as necessary to explain the context in which Leake made the statements revealing his state of mind.")) (emphasis added).

Second, the Federal Rules of Evidence also provide for an exception to the rule against hearsay when the statement offered represents the declarant's then-existing

15

state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, *mental feeling*, pain and bodily health). Fed. R. Evid. 803(3) (emphasis added). However, "the statement must be limited to a declaration showing the declarant's state of mind and not the factual occurrence engendering that state of mind." *United States v. Lentz*, 282 F. Supp. 2d 399, 410-11 (E.D. Va. 2002) (citing *United States v. Joe*, 8 F.3d 1488, 1492 (10th Cir. 1993)).

To be admissible under this exception, "(1) the statement must be contemporaneous with the mental state sought to be proven; (2) there must be no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his or her thoughts; and (3) the declarant's state of mind must be relevant to an issue in the case." *United States v. Srivastava*, 411 F. App'x 671, 684 (4th Cir. 2011) (citing *United States v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992)). Thus, where state of mind itself is in issue—including both knowledge and intent— the Court "must determine if the declarant's state of mind at the time of the declaration is relevant to the declarant's state of mind at the time at issue.' *Id.* (citing *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980)).

Here, Mr. Kalugin's statements of affection in messages with Ms. Gallagher satisfy each required element. First, the messages between Mr. Kalugin and Ms. Gallagher were contemporaneous to the mental state sought to be proven—that is, they were sent during the time that the government alleged Mr. Kalugin to have knowledge of his purported separation from Ms. Gallagher, rather than sent retrospectively as a comment upon his past beliefs about their relationship. Second,

16

the messages were shared privately, only between the two of them. Therefore, there were no suspicious circumstances suggesting a motive to fabricate. These were not, for example, statements made to a government official, an immigration official, or made publicly. The defendants had no reason to believe at the time that anyone would be privy to these private messages of affection.[4]  Finally, Mr. Kalugin's state of mind was relevant to the central issue in the case—whether he believed that he was "separated" from Ms. Gallagher at the time he filled out his Form N-400 and whether he had a good faith intent to reside with her when he swore as such at his naturalization interview. Evidence of his then-existing emotions from direct, private communications such as "I love you" and "sleep tight my angel, babies are sleeping soundly" are directly relevant to Mr. Kalugin's state of mind, and by extension, the *mens rea* element that the government was charged with proving beyond a reasonable doubt.

## IV.   The exclusion of the evidence was not harmless, and warrants a new trial.

Not only were the proffered statements relevant, but they were also plainly exculpatory. Where there was no direct evidence that Mr. Kalugin believed that he

---

[4] And, indeed, as defense counsel pointed out in various pre-trial filings, these communications fall within the marital communications privilege, such that they are much more likely to include intimate details and real candor that public policy aims to promote and protect. Although the privilege was waived with respect to these communications by Mr. Kalugin seeking to introduce them at trial, the fact that they fall within its scope suggests that they *per se* satisfy the second *Srivastava* element, absent evidence to the contrary.

was separated when he applied for naturalization, exclusion of these messages warrants a new trial.

The evidence that Mr. Kalugin proffered was central to Mr. Kalugin's defense that he did not believe his marriage was over. First, the statements were the only contemporaneous evidence of what Ms. Gallagher shared with Mr. Kalugin in the summer of 2016. Second, the statements were the only contemporaneous evidence of his then-existing state of mind.[5] Third, as they were private conversations in a forum that neither party would have anticipated could be viewable by others, they would have provided critical corroboration of Mr. Kalugin's trial testimony that he did not consider himself to be separated from Ms. Gallagher at any period during his naturalization application process. *Bellinger*, 652 Fed. App'x at 150 (internal citations omitted) ("[A] defense, discounted by the jury when standing alone, may have been believed when bolstered by corroborative testimony."); *see also Martin*, 657 Fed. App'x at 200 (error not harmless where excluded statements were "the only evidence that could corroborate [defendant's] testimony about why he initially sought a gun from Battle and why he stopped looking for one"); *see also Ibisevic*, 675 F. 3d at 349 (trial court's erroneous exclusion of the defendant's statements as hearsay was not

---

[5] Though the defense presented witnesses that testified that they observed Mr. Kalugin and Ms. Gallagher to be physically affectionate towards one another, this evidence dated to a later time period, and the government dismissed these witnesses as having no real knowledge of the defendants' states of mind, and, perhaps more importantly, motive to support the defendants. Sept. 10, 2021 Trial Tr. at 35. Their private, recorded conversations were exactly the sort of compelling, unimpeachable evidence that Mr. Kalugin could have used to counter that argument, had he been able to show the statements to the jury.

harmless because the evidence was central to the defense); *Leake*, 642 F.2d at 72-21 (finding exclusion of statements made to defendant warranted new trial because the evidence might have allowed jury to find that defendant lacked *mens rea* necessary to convict him); *Kohan*, 806 F.2d at 22 (ordering new trial where excluded statements "would have corroborated [defendant's] statements to law enforcement officials, thereby helping to diminish the effect of their self-serving nature"), *cited in Martin*, 806 F.2d at 22.

Thus, the exclusion of this evidence in Mr. Kalugin's case was not harmless, just as the Fourth Circuit found in *Bellinger, Martin, Ibisevic,* and *Leake*.

## Conclusion

Given the how critical and exculpatory the excluded evidence was to Mr. Kalugin's defense, the error in excluding it reasonably could have affected the jury's verdict. *See Ibisevic*, 675 F.3d 342, 350. Consequently, Mr. Kalugin respectfully requests that this Court set aside the verdict and grant him a new trial.

Respectfully submitted,

Andrey Kalugin

By Counsel,

GEREMY KAMENS
Federal Public Defender

19

_____/s/_____
Elizabeth Mullin, 86668
Ann Mason Rigby, 92996

Federal Public Defender Office
Eastern District of Virginia
1650 King Street, Suite 500
Alexandria, VA  22314
Telephone:   703-600-0879
Facsimile:     703-600-0880
Elizabeth_Mullin@fd.org

Maia Livengood
DC Bar No. 1724598
Volunteer Attorney